IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

BERRADA PROPERTIES MANAGEMENT
INC. and YOUSSEF BERRADA,

    Plaintiffs,

v.   Case No. 20-CV-1872

RANDY ROMANSKI and JOSH KAUL,

    Defendants.

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

### ARGUMENT

### I. Plaintiffs fail to state a Fourteenth Amendment procedural due process claim.

Plaintiffs' arguments in response to Defendants' motion to dismiss the Fourteenth Amendment claim center around Wis. Stat. § 93.18. They claim that statute is both the source of their property interest and the procedural protection of that interest. Both arguments are wrong.

As a preliminary matter, it is important to note that Wis. Stat. § 93.18 does not apply to Plaintiffs in this situation at all. As explained in Defendants' opening brief, the procedures in Wis. Stat. § 93.18 are directed at the type of "special" order issued by the Department of Agriculture, Trade and Consumer Protection (DATCP) to enjoin a specific individual from engaging in unfair business practices. (*See* Dkt. 11:3–4 (citing Wis. Stat. §§ 93.18(1), (2), 100.20(2)–(4)).) The procedures outlined in Wis. Stat. § 93.18(2) are not required for preliminary investigative CIDs. Wisconsin Stat. § 93.18(2)'s requirement only applies to a "matter relating to issuing, revoking or amending a special order relating to named persons . . . *complained*

*against.*" This section is not applicable here because DATCP has not yet issued a complaint against Plaintiffs. Further, Plaintiffs' argument that a hearing, complaint, and witnesses should all be provided before DATCP is even allowed to investigate a person through the use of CIDs does not make sense. It would erect an unjustified and significant practical obstacle to legitimate consumer protection investigations, essentially requiring DATCP to go through a hearing and reveal evidence and legal theories before ever obtaining the relevant information from the persons or businesses whose practices are under scrutiny. Plaintiff's' position also contradicts the plain language of Wis. Stat. § 93.16, which states that DATCP may use the investigative tools set forth in Wis. Stat. §§ 93.14 and 93.15 (including sworn answers in writing) "to determine whether a hearing or proceeding *ought to be begun.*" Wis. Stat. § 93.16(1), (2). Wisconsin Stat. § 93.18 simply does not apply to the preliminary investigation at issue here.

Even assuming Wis. Stat. § 93.18 applies, though, Plaintiffs' due process claim still fails as a matter of law. Plaintiffs assert that Wis. Stat. § 93.18 is the source of their protected property interest: "BPM has a constitutionally protected interest in accessing the adjudicatory procedures set forth in Wis. Stat. § 93.18 to challenge Defendants' unlawful overreach in issuing the CIDs." (Dkt. 12:10.) There is no legal basis for this assertion. The statute creates no substantive rights, it simply provides a procedure. There is no property interest in process itself. *See Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982).

Plaintiffs argue that *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), demonstrates that there can be a property interest in a state-created

procedure. (Dkt. 12:11–12.) *Logan* does no such thing. The protected property interest in *Logan* was not a state-created procedure, as Plaintiffs argue; it was a state-created "cause of action" belonging to an injured employee against his employer for unlawful termination. *Logan*, 455 U.S. at 424, 428, 432. There is no similar cause of action here. Wisconsin Stat. § 93.18 does not create a substantive right to pursue a claim; it simply provides a procedure before a type of special order can issue. Thus, even if Wis. Stat. § 93.18 applied in this context (it does not), it is not a state-created property interest under *Logan*.

Plaintiffs' attempt to distinguish *Shango* is similarly unavailing. In *Shango*, the Seventh Circuit held that a state regulation governing prison transfers did not create a liberty interest in remaining at a particular institution because prison officials had unlimited discretion to transfer inmates. 681 F.2d at 1100–01. The court characterized as "analytically indefensible" the argument that "the procedures established by the regulations can themselves be considered a liberty interest" and recognized that "a state created procedural right is not itself a liberty interest within the meaning of the Fourteenth Amendment." *Id*. Here, Plaintiffs advance this identical argument rejected by *Shango*: that a procedure established by statute—Wis. Stat. § 93.18—is a property interest protected by due process. And just as the prisoner in *Shango* had no substantive right to remain at a particular prison, Plaintiffs here

have no substantive right to access the adjudicatory procedures set forth in Wis. Stat. § 93.18.[1] That alone is fatal to their due process claim.

Even if DATCP's issuance of CIDs deprived Plaintiffs of a protected interest, their due process claim still fails because they were afforded all the process that was due. The CIDs themselves gave notice of the investigation, including who was investigating, what information was sought, and for what purpose. (Dkt. 8:5–6, ¶¶ 27–30, Exs. 5–6.) And before providing a response, Plaintiffs, with the assistance of counsel, could have objected to the CIDs if they felt they were unlawful or issued without authority. *See* Wis. Admin. Code ATCP §§ 1.03(3)(a)1., 2., 1.06, 1.34; Wis. Stat. §§ 227.42, 227.52. Plaintiffs chose not to object or utilize the procedures afforded them under state law to challenge the CIDs, and instead fully responded. The fact that they did not use the available procedures does not create a procedural due process claim. *See Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) (observing that "a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them").[2]

---

[1] Plaintiffs argue that the CIDs themselves "further implicate liberty and property rights on their face, because they explicitly threaten fines and imprisonment." (Dkt. 12:14.) But enforcing these potential penalties would require Defendants to bring a separate criminal action with attendant procedural protections. *See* Wis. Stat. §§ 93.21(4), 939.60, 939.74. The mere possibility of sanctions—that could be imposed only with additional process—does not create a liberty or property interest.

[2] Plaintiffs argue that they did not have sufficient opportunity to object because "the only appropriate procedure was notice and a hearing" under Wis. Stat. § 93.18(2) and that *Dusanek* is "not inconsistent with this point" because "[u]nlike the situation in *Dusanek*, the core of BPM's due process claim is that Defendants did *not* comply with state statutes." (Dkt. 12:15.) Just because Defendants did not provide Plaintiffs' *preferred* procedures, does not mean that the procedures provided were inadequate. Here, they were adequate, and Plaintiffs simply chose not to pursue them.

4

Case 2:20-cv-01872-BHL   Filed 03/09/21   Page 4 of 16   Document 13

Finally, Plaintiffs argue that the Supreme Court cases about fact-finding investigations do not apply here. They contend that *Securities and Exchange Commission v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984), is distinguishable because it "referred specifically to investigations where there was no penalty for refusal to obey." (Dkt. 12:16.) That is not correct. The subpoenas in *O'Brien*, like the CIDs here, were not self-enforcing and there was no automatic penalty for non-compliance; rather, the government agency, like DATCP, would have to bring a separate suit to compel compliance. *See O'Brien*, 467 U.S. at 741. Plaintiffs similarly argue that *Hannah v. Larche*, 363 U.S. 420 (1960), is distinguishable because the government agency there was "purely investigative and fact-finding," whereas here DATCP and DOJ could ultimately bring an enforcement action in circuit court. (Dkt. 12:17 (quoting *Hannah*, 363 U.S. at 441).) While it is true that they could do so, it does not mean that the agencies' underlying investigation deprives the target of the investigation of liberty or property. Those rights might be implicated in a separate enforcement action, but such an action would include all the procedural protections afforded to litigants in a civil or criminal case. *See* Wis. Stat. §§ 93.18(2), 93.22, 100.18(11)(d), 100.20(3), (4), 100.26(3), (4), (6). At the pre-enforcement, fact-gathering phase, Plaintiffs are not entitled to the far-reaching due process protections they seek. Their claims should be dismissed.

## II. Plaintiffs fail to state a Fourth Amendment claim.

### A. *Morton Salt* and *Oklahoma Press* are controlling here.

Plaintiffs first respond to the Fourth Amendment argument by challenging the application of *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), and

*Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946). However, courts regularly rely on *Morton Salt* and *Oklahoma Press* in interpreting the Fourth Amendment parameters to state agency investigative authority. *See Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1020 (Ill. 1981) (noting that "[t]he authority of the *Morton Salt* and *Oklahoma Press Publishing* decisions [are] unquestioned in the Federal system," and "have been followed by the courts of several States in upholding similar provisions for investigation in their consumer protection statutes."); *Kohn v. State by Humphrey*, 336 N.W.2d 292, 297–98, n.3 (Minn. 1983) (acknowledging that "*Oklahoma Press* and *Morton Salt* are dispositive here," and that "[c]ourts in other states have applied the *Morton Salt* standard to reject fourth amendment challenges to Civil Investigative Demands issued by attorney general's offices and consumer protection agencies."). Indeed, both *Morton Salt* and *Oklahoma Press* involve Fourth Amendment constitutional challenges to an agency's authority to obtain records and information from entities they are statutorily authorized to regulate—just as with DATCP and Plaintiffs' landlord-tenant activities here. There is no credible argument for discounting these two Supreme Court decisions' binding effect on Plaintiffs' Fourth Amendment challenge.

### B. The CIDs were within DATCP's authority.

DATCP has authority to obtain information "regarding products and situations that are the subject of laws under its supervision," Wis. Stat. § 93.06(1)(f), including residential rental practices under Wis. Admin. Code ATCP ch. 134. Wisconsin Stat. § 93.16(1) authorizes DATCP to "conduct such preliminary investigation as is necessary and proper to determine whether a hearing or proceeding ought to be

6
Case 2:20-cv-01872-BHL   Filed 03/09/21   Page 6 of 16   Document 13

begun," and subsection (2) authorizes DATCP to utilize the tools set forth in Wis. Stat. §§ 93.14 and 93.15 to conduct these investigations. Under Wis. Stat. § 93.15(1), DATCP can require landlords such as Plaintiffs "to file with [DATCP], at such time and in such manner as [DATCP] may direct, sworn or unsworn reports or sworn or unsworn answers in writing to specific questions." And Wis. Stat. § 93.15(2) authorizes DATCP to have access to and make copies of any document in the possession of any person engaged in business if such document "is relevant to any matter which [DATCP] may investigate."

Plaintiffs wisely concede that "DATCP has authority to conduct a preliminary investigation to determine whether a hearing or proceeding ought to be instituted," along with the "authority to require sworn responses like those required in the CIDs." (Dkt. 12:22, 23.) But Plaintiffs argue that DATCP can use these *preliminary* investigative tools only *after* completing the notice and hearing procedures outlined in Wis. Stat. § 93.18(2). As discussed in section I., this argument lacks statutory support and makes no logical sense.

Plaintiffs also contend that DATCP had no authority to issue CIDs under Wis. Stat. § 100.18(11)(c)1. because "[n]owhere do the CIDs suggest they are relevant to the investigation of Wis. Stat. § 100.18." (Dkt. 12:21.) But Plaintiffs cite no authority requiring DATCP to recite on the face of the CIDs all the bases for its investigation and every law it believes may have been violated. And Plaintiffs concede that at some point "DATCP accuse[d] BMP of violating Wis. Stat. § 100.18." (Dkt. 12:21 n.7.) Thus, the CIDs were authorized under both Wis. Stat § 93.15(1) (to investigate potential violation of Wis. Stat. § 100.20) and Wis. Stat. § 100.18(11)(c)1. (to investigate

potential violations of Wis. Stat. § 100.18). Even assuming DATCP's investigation was "merely on suspicion that the law [wa]s being violated," it would not violate the Fourth Amendment. *See Morton Salt*, 338 U.S. at 642–43.

Lastly, Plaintiffs rely on *Lundeen v. Department of Agriculture, Trade and Consumer Protection*, 189 Wis. 2d 255, 525 N.W.2d 758 (Ct. App. 1994), in support of their argument that Wis. Stat. § 93.15 did not provide authority for DATCP to issue the CIDs here. Their reliance is misguided. In *Lundeen*, the plaintiff was issued a notice of intent to suspend his Grade A dairy license and charged reinspection fees after an inspection uncovered several code violations. The inspection was without prior notice and outside the plaintiff's presence. Unlike in *Lundeen*, the CIDs here did not involve DATCP's physical presence on Plaintiffs' property and unsupervised inspection of either the premises or business records. And the CIDs here described the parameters of DATCP's requests, so there was no need to rely on the "statutory schemes" to establish "the frequency and purpose of inspections" to keep DATCP's discretion in check. Lastly, Plaintiffs had every opportunity to object to the CIDs under state law but did not, unlike in *Lundeen*, where the inspection was unannounced and conducted outside of his presence. *Lundeen* does nothing to defeat the authority of DATCP to issue the CIDs here.

### C. The information sought by the CIDs was relevant.

Plaintiffs argue that to survive the relevancy prong of the Fourth Amendment analysis, the CIDs cannot be used as "fishing expedition[s]" and instead must realistically "'throw light upon' the inquiry raised by the complaint" (Dkt. 12:24 (quoting *EEOC v. United Air Lines, Inc.*, 287 F.3d 643 (7th Cir. 2002).) Plaintiffs

8

Case 2:20-cv-01872-BHL   Filed 03/09/21   Page 8 of 16   Document 13

reliance on *United Air Lines* is mistaken. The authority of the EEOC to investigate is grounded in the charge of discrimination. "[U]nlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'" *United Air Lines*, 287 F.3d at 650 (citation omitted). This distinction was further recognized in *United States Department of Education v. National Collegiate Athletic Association*, where the court explained that "the EEOC's 'power to conduct an investigation can be exercised only after a specific charge has been filed in writing,'" and "[i]n this respect the Commission's investigatory power is significantly narrower" then other government agencies "who are authorized to conduct investigations, inspect records, and issue subpoenas, whether or not there has been any complaint of wrongdoing." 481 F.3d 936, 941 (7th Cir. 2007) (citation omitted). Thus, the scope of an EEOC subpoena, and what is relevant for purposes of an EEOC investigation, is not instructive for government agencies like DATCP, who are authorized to conduct investigations and issue CIDs, whether or not there has been any complaint of wrongdoing.

    Misguided by the limitations on the EEOC's investigatory authority, Plaintiffs go on to argue that the CIDs here did not request relevant information because they inquired about such things as: BMP's business structure; information about 100 former tenants; internal accounting information; check-in and check-out procedures; the identification of rental properties BMP has agreed to purchase; and identification of BMP's directors, officers, and employees. (Dkt. 12:24.) They argue that because this information is "not 'relevant' to any particular charge or complaint,"

9

Case 2:20-cv-01872-BHL    Filed 03/09/21    Page 9 of 16    Document 13

it violates the Fourth Amendment. (Dkt. 12:24.) But as explained above, DATCP's statutory authority to obtain information "regarding products and situations that are the subject of laws under its supervision" is not restricted by, or tethered to, a particular charge or complaint, like it is for the EEOC. *See* Wis. Stat. § 93.06(1)(f). All of the information requested in the CIDs here concern residential rental practices, which is undisputedly under DATCP's supervision.[3]

Plaintiffs further argue that at this preliminary investigation stage, DATCP was required to "explain their bases to investigate BPM" for the CIDs to pass Fourth Amendment scrutiny. (Dkt. 12:26.) They cite no authority for this premise, nor does any exist. Their argument is nothing more than an attempt to require probable cause before DATCP can exercised its investigative authority, which the Supreme Court has rejected. *See Oklahoma Press*, 327 U.S. at 215–16.

The CIDs easily pass the Fourth Amendment's relevance requirement, which is met so long as the investigatory request is "not plainly incompetent or irrelevant to any lawful purpose" under the authorizing statute. *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943). DATCP's investigation occurred pursuant to a

---

[3] Furthermore, the specific information requested in the CIDs was relevant to DATCP's investigation of BMP. BMP's business structure, directors, officers, and employees are relevant so DATCP can properly identify who it is investigating, the scope of potential violations, potential witnesses, the owners of the company, and who would be a properly named defendant(s) in an enforcement action. *See* Wis. Admin. Code ATCP § 134.02(5) (defining "landlord"). Information regarding 100 tenants—many identified by the newspaper articles—and BMP's other rental properties is relevant to whether BMP's potential violations are wide-spread or isolated to specific tenants, which could affect any remedial action. Wis. Stat. § 100.20(3), (4). The transactional records are relevant to determining if BMP is violating regulations concerning how late fees, court fees, and attorney fees are charged to tenants, and the withholding of security deposits. *See* Wis. Admin. Code ATCP §§ 134.06, 134.08(4), 134.09(8)(a)–(c).

lawful purpose of investigating, regulating, and enforcing Wis. Stat. §§ 100.18 and 100.20, as well as Wis. Admin. Code ATCP ch. 134. As such, the CIDs satisfy the relevancy requirement under the Fourth Amendment.

### D. The CIDs were specific in directive so that compliance was not unreasonably burdensome.

Plaintiffs contend that, because the CIDs were broad in scope and compliance was "costly in terms of both money and time," the CIDs were overly burdensome in violation of the Fourth Amendment. (Dkt. 12:27–29.) Expending time and resources is not enough to show burden. As the Seventh Circuit has recognized, "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir. 1982) (citation omitted). The burden of showing that the request is unreasonable is on the subpoenaed party. *Id.* That burden is not easily met where, as here, the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose. *Id.* "Broadness alone is not sufficient justification to refuse enforcement of a subpoena." *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977). Thus, as explained in *Texaco*, "courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *Id.*

Nothing in Plaintiffs' amended complaint supports that responding to the CIDs "disrupt[ed] or seriously hinder[ed] normal operations of" Plaintiffs' business. *Id.* Plaintiffs expended time and resources in responding, but this "is to be expected and is necessary in furtherance of [DATCP]'s legitimate inquiry and the public

interest." *Dow Chemical*, 672 F.2d at 1267 (quoting *Texaco*, 555 F.2d at 882). The CIDs were not so onerous that Plaintiffs either could not comply or sought refuge from complying through available state law remedies. Just the opposite. The CIDs were sufficiently tailored so that Plaintiffs were able to voluntarily and fully respond in a timely manner. And the process resulted in Plaintiffs returning over one million dollars in late fees improperly collected from tenants (Dkt. 8 ¶ 40), further demonstrating that the CIDs were consistent with the authority, purpose, and scope of DATCP's investigation and duty to protect the public interest.

Plaintiffs' unsupported claims of broadness and conclusory allegations of burdensomeness in responding to the CIDs are not sufficient the meet their burden of showing that the CIDs were unreasonable under the Fourth Amendment. Plaintiffs' Fourth Amendment claim fails and should be dismissed.

### III.  Plaintiffs fail to state a "class-of-one" equal protection claim.

Plaintiffs assert that they have met the requirements for stating a class-of-one claim because their amended complaint alleges that the DATCP's "unreasonable and unusually broad investigation of BPM is dramatically different from the way that they deal with other landlords and property management companies" and "that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff." (Dkt. 12:30 (citing Dkt. 8:14–15, ¶¶ 80, 89, 91, 93).) Plaintiffs' conclusory allegations are not enough. They have not identified a single similarly situated landlord who was treated differently, and their unsupported allegations of improper motive are defeated by their own complaint and exhibits, which reveal a rational basis for the investigation.

A plaintiff pursuing a class-of-one claim must plead that a state actor discriminated against him with no rational basis. *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). A common, though not required, method of making such a showing is to identify some comparator—a similarly situated person—who was treated differently. *Id.* In the absence of a comparator, a plaintiff may only avoid dismissal by pleading "that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." *Id.* at 1121. But a complaint does not survive by merely alleging an improper motive; at the pleading stage "[a]ll it takes to defeat [a class-of-one] claim is a conceivable rational basis for the difference in treatment." *Id.* (alteration in original) (citation omitted). Plaintiffs may "plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials." *Id.*

While Plaintiffs allege that DATCP treated them differently from "similarly situated landlords and property owners" without "any rational basis" (Dkt. 8:16, ¶ 89), they do not identify a comparator. Nor do they offer any factual support for their contention that they were targeted by DATCP for arbitrary and irrational treatment. Plaintiffs conclusory allegations are not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [under Rule 8]." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

In fact, Plaintiffs plead themselves out of court because the facts set forth in their pleadings show a rational basis for DATCP's investigation. Plaintiffs acknowledge wide-spread newspaper articles describing their unfair dealings with

tenants and other state law violations. (Dkt. 8:8, ¶ 44.) DATCP also received several complaints about Plaintiffs' unlawfully entering units and harassing tenants at the Beaver Creek Apartments. (Dkt. 8:4, ¶ 22; 8-1.) DATCP was authorized to investigate these potential violations of residential rental practices once they came to light. *See* Wis. Stat. §§ 93.07(1), (24), 100.20; Wis. Admin. Code ATCP ch. 134.

Plaintiffs do not dispute DATCP's authority to investigate. Instead, they claim their allegations "pertain to the *nature* of DATCP's investigation, not merely the fact of it." (Dkt. 12:30.) They argue that DATCP's requests were broader than the citizen complaints that Plaintiffs incorrectly assume were the sole basis for the investigation and "included successive demands for more and more information" about Berrada, his family, and "nearly every facet of BPM's business." (Dkt. 12:30–31.) But the nature and scope of DATCP's investigation was more than justified by the wide-ranging allegations detailed in the media accounts, the extraordinarily large size of Plaintiffs' operation—they manage "approximately 6,200 residential rental units" and are "one of the largest landlords in the greater Milwaukee area"—and the fact, as mentioned in one of the articles, that Plaintiffs had been previously warned by DATCP for violating residential rental practices. (Dkt. 8:3, 8, ¶¶ 16, 44.) These facts demonstrate a "conceivable rational basis" for DATCP's investigation, which is all that is required to defeat Plaintiffs' class-of-one claim.

Plaintiffs' claim fails for an additional reason. Discretionary or selective enforcement of the law—like that alleged by Plaintiffs here—is "not typically a basis for a class-of-one challenge" unless the enforcement is "based on some invidious

14
Case 2:20-cv-01872-BHL   Filed 03/09/21   Page 14 of 16   Document 13

discrimination." *Van Dyke v. Vill. of Alsip*, 819 F. App'x 431, 431–33 (7th Cir. 2020) (unpublished); *see also United States v. Moore*, 543 F.3d 891, 899–900 (7th Cir. 2008). Plaintiffs argue that *Van Dyke* and *Moore* do not apply because their "objection is not to the discretionary or selective enforcement of landlord-tenant laws, but to the unreasonable nature of the DATCP's investigation." (Dkt. 12:32.) This argument fails because the reasoning that prevents a class-of-one claim based on the discretionary decision to enforce a law applies equally to the decision to investigate. *See Flowers v. City of Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009) ("while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim").

To succeed on their class-of-one claim, then, Plaintiffs must demonstrate that the DATCP's investigation was not only irrational, but invidious. Plaintiffs allegations do not support such a showing. They point to the same facts that they say show the investigation was arbitrary, including "unfair mischaracterizations" in the newspaper articles and the broad scope of the investigation. (Dkt. 12:32–33.) As discussed above, these facts do not sufficiently allege irrational treatment, much less invidious discrimination. Therefore, Plaintiffs do not state a plausible claim for relief, and their equal protection class-of-one claim should be dismissed.

# CONCLUSION

This Court should dismiss Plaintiffs' amended complaint in its entirety.

Dated this 9th day of March, 2021.

        Respectfully submitted,

        JOSHUA L. KAUL
        Attorney General of Wisconsin

        Electronically signed by:

        <u>s/ Karla Z. Keckhaver</u>
        KARLA Z. KECKHAVER
        Assistant Attorney General
        State Bar #1028242

        JODY J. SCHMELZER
        Assistant Attorney General
        State Bar #1027796

        Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6365 (KZK)
(608) 266-3094 (JJS)
(608) 294-2907 (Fax)
keckhaverkz@doj.state.wi.us
schmelzerjj@doj.state.wi.us