UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BERRADA PROPERTIES MANAGEMENT INC,
YOUSSEF BERRADA,

            Plaintiffs,

v.                                            Case No. 20-cv-1872-bhl

RANDY ROMANSKI,
JOSH KAUL,

            Defendants.

## ORDER GRANTING MOTION TO DISMISS AND REMANDING THE CASE

      In our system of dual sovereignty, out of respect for their coequal counterparts, federal courts must refuse to intrude on certain types of important state proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971). The question in this case is whether that abstention principle applies when a plaintiff asks a federal court, not to enjoin parallel state proceedings, but instead to fashion an offensive weapon the plaintiff may use to reshape the nature of those proceedings. The answer is yes. Because the principles underlying *Younger* abstention apply with equal force here, the Court must abstain and allow the state courts to resolve the parties' disputes.

### BACKGROUND[1]

      Berrada Properties Management, Inc. (BPM) is the exclusive management agent for properties owned by various Wisconsin limited liability companies of which Youssef Berrada is the sole member. (ECF No. 8 ¶14.) BPM currently manages about 6,200 residential rental units in the greater Milwaukee area. (*Id.* ¶16.) Since July 13, 2018, BPM's allegedly unfair treatment of tenants has been the subject of several articles in the *Milwaukee Journal Sentinel*. (ECF No. 11 at 6.) These articles, along with three anonymous complaints, led the Wisconsin Department of

---

[1] When a party asks the Court to decline jurisdiction pursuant to an abstention doctrine, its motion "fits more comfortably under Rule 12(b)(1)" than Rule 12(b)(6). *Bolton v. Bryant*, 71 F. Supp. 3d 802, 809 n.2 (N.D. Ill. 2014). It is therefore appropriate for the Court to "look both to the allegations in the complaint and to other materials relating to the exercise of jurisdiction." *Mulrey v. Wis. Off. of Lawyer Regul.*, No. 21-cv-0603, 2021 WL 3603047, at *3 (E.D. Wis. Aug. 13, 2021).

Agriculture, Trade, and Consumer Protection (DATCP) to open an investigation into BPM and Berrada in April of 2020. (*Id.* at 6-7.) As part of this investigation, the DATCP issued a series of civil investigative demands (CIDs). (ECF No. 8 ¶¶28-60.)

Berrada and BPM timely responded to the CIDs. (*Id.* ¶47.) But they grew increasingly suspicious when the responses did not placate the government and the investigation continued to expand in both purpose and breadth. (*Id.* ¶¶49-50.) After obtaining new legal counsel, Berrada and BPM changed strategy and went on the offensive, bringing this lawsuit against Wisconsin Attorney General Josh Kaul and Randy Romanski, the Secretary-Designee of the DATCP. (ECF No. 1-2.) They filed their complaint in Ozaukee County Circuit Court but invoked federal law, 42 U.S.C. §1983, as the basis to ask the state court to quash the CIDs and declare them violative of the Fourth and Fourteenth Amendments. (*Id.* ¶¶78-84.) The case then took a curious procedural turn. The defendants—both officers of the state of Wisconsin—elected *not* to have their conduct adjudicated by the state courts, but instead removed the case to this Court, invoking federal question jurisdiction. (ECF No. 1.) After removal, they promptly moved to dismiss. (ECF No. 10.)

Then, with the motion to dismiss pending, the State of Wisconsin, represented by Kaul, filed a second lawsuit—an enforcement action against Berrada and BPM—in Milwaukee County Circuit Court (rather than the Ozaukee County Circuit Court where this case began). (ECF No. 17 at 3.) Relying heavily on Berrada's and BPM's responses to the DATCP's CIDs, the state's lawsuit seeks injunctive relief, restitution, and civil forfeitures for violations of Wis. Stat. Sections 100.18, 100.195, 100.20, and Wis. Admin. Code ATCP chapter 134. (*Id.*; ECF No. 20 at 2.)

After learning of the parallel state court proceeding, the Court ordered the parties to submit supplemental briefing on the issue of abstention. (ECF No. 15.) Having initially removed this case from state court, Defendants now urge the Court to abstain from exercising federal jurisdiction, a position that Plaintiffs oppose. (ECF Nos. 17 & 20.)

## LEGAL STANDARD

A federal district court does not normally choose its constituents. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (holding that district courts have a "virtually unflagging obligation" to exercise federal jurisdiction where it exists). The *Younger* abstention doctrine—which recognizes that, as coequal sovereigns, state courts ought to be able to work without federal courts lurking over their shoulder—is an exception to this general

rule. *See Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (explaining that courts should dismiss certain cases "rather than intervene in state affairs"). While *Younger* initially applied only to federal cases that interfered with state *criminal* proceedings, the Supreme Court has since expanded the principles it embraced to encompass federal lawsuits "filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010) (citations omitted). In those instances, *Younger* prohibits federal courts from wading into ongoing state proceedings "that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims." *Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 665-66 (7th Cir. 2007) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982)).

## ANALYSIS

In a twist befitting a Greek comedy, Defendants—the very parties that snatched this case from the hands of Wisconsin's state court system—now insist that federal adjudication on the merits would offend that system's sovereignty. If irony alone could confer jurisdiction, any further discussion would be superfluous. But *Younger* abstention turns instead on "principles of equity, comity, and federalism." *SKS*, 619 F.3d at 677. Plaintiffs assert that those principles do not apply because this case is not quintessentially *Younger*. (ECF No. 20 at 4.) While this may be true, *Younger* abstention is not subject to Cinderella's glass slipper test. *See J.B. v. Woodward*, 997 F.3d 714, 722 (7th Cir. 2021) ("it falls short to say that none of the abstention doctrines is a literal or perfect fit"). Rather, *Younger* abstention applies when federal intervention would improperly disrupt ongoing state court proceedings, accomplishing the kind of interference that *Younger* sought to prevent, even if the specifics are distinguishable. *See SKS*, 619 F.3d at 677; *Woodward*, 997 F.3d at 723; *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974).

Here, Plaintiffs' due process claims hinge on a particular interpretation of Wisconsin administrative procedure as codified in Wis. Stat. §93.18. (ECF No. 8 at 13.) That provision states that "in any matter relating to issuing, revoking or amending a special order relating to named persons . . . [t]he person complained against shall be entitled to be heard in person." Wis. Stat. §93.18(2). According to Plaintiffs, this means that Defendants had to conduct an in-person hearing prior to the issuance of any CIDs. According to Defendants, this part of Section 93.18 applies

only in the context of a "special order," which was not issued in this case. Rather, Plaintiffs were subject to a "preliminary investigation" under Wis. Stat. §93.16, a different provision of state administrative law. Defendants contend that Section 93.16 allows the issuance of CIDs pursuant to Wis. Stat. §93.15(1) without a pre-issuance hearing. Suffice it to say, the correct interplay between these state statutes under Wisconsin law is not self-evident.

In some sense, then, the intervention Plaintiffs seek is doubly offensive—it requires the Court to make the first pass at several Wisconsin statutory provisions and then, based upon federal construction of those state provisions, apply federal law to determine whether introduction of certain pieces of evidence in a parallel state court proceeding violates due process. While perhaps not a dead ringer for *Younger*, this case nevertheless fits neatly into the abstention canon. The Court will therefore abstain and allow the state courts to settle the dispute.

## I. Because Federal Action Would Accomplish the Kind of Interference that *Younger* Sought to Prevent, the Court Must Abstain.

At bottom, *Younger* represents federal acknowledgement of the competency and coequal authority of state courts. It holds that, if federal adjudication of an issue would interfere with a state court proceeding that satisfies the *Middlesex* factors, the federal court must abstain, unless an exception applies. *See Grandco Corp. v. Rochford*, 536 F.2d 197, 203 (7th Cir. 1976). Because hearing this case would lead to improper disruption of a state court proceeding, and no exception applies, the Court must abstain.

### A. Plaintiffs' Requested Relief Would Cause this Court to Interfere with Ongoing State Court Proceedings.

As a threshold matter, *Younger* is inapposite unless the federal plaintiff's requested relief would actually interfere with an ongoing state court proceeding. *See Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 (1st Cir. 2012). Plaintiffs argue that only an injunction—not the declaratory judgment they seek—constitutes interference of the kind *Younger* prohibits. *See Hoover v. Wagner*, 47 F.3d 845, 848 (7th Cir. 1995) (holding that *Younger* prohibits a state court defendant from "bringing a suit in federal court *to enjoin the [state court] prosecution* on the ground that the state statute on which it is based is unconstitutional") (emphasis added). But the caselaw adopts no such rigid distinction. *See Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995) (noting that, in *Samuels v. Mackell*, 401 U.S. 66 (1971), the Supreme Court held that abstention was appropriate when the federal plaintiff sought a declaratory judgment, which would have the

same disruptive effect as an injunction); *see also Woodward*, 997 F.3d at 723 (even though "no abstention doctrine [was] an exact fit," the Seventh Circuit found abstention proper because the plaintiff sought "a favorable federal constitutional ruling" that he could use to shape "the direction and course of the state court proceedings"); *O'Shea*, 414 U.S. at 500 (the Supreme Court enforced abstention where the federal plaintiff's requested relief was "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state [] trials" because that relief appeared to be "nothing less than an ongoing federal audit of state [] proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* [] and related cases sought to prevent"). These decisions disapprove of federal action that could disrupt ongoing state proceedings; they do not obsess over the species of disruption that might occur.

The dispositive question here is whether the requested relief will disrupt the pending state case. And Plaintiffs have not been shy about admitting that it will. Their motion to stay filed in Milwaukee County Circuit Court specifically says that "the issues presently" before this Court "will have a direct impact on how the [state court] case proceeds." (ECF No. 21-3 at 4.) The declaratory judgment Plaintiffs seek is, thus, just as much an affront to the spirit (if not the letter) of *Younger* as any injunction. *See SKS*, 619 F.3d at 678 (noting that even if *Younger* does not completely fit, abstention is warranted in a 42 U.S.C. §1983 action if the case implicates the same principles of equity, comity, and federalism). The form the disruption takes is immaterial. The threshold inquiry is therefore satisfied.

### B. The State Proceeding Is Judicial in Nature, Implicates Important State Interests, and Offers an Adequate Opportunity for Review of Constitutional Claims, so this Court Must Abstain.

Under *Middlesex County*, even if a plaintiff's requested relief would interfere with a state court civil proceeding, a federal court should not abstain unless that state court proceeding is "'(1) judicial in nature, (2) implicate[s] important state interests, and (3) offer[s] an adequate opportunity for review of constitutional claims.'" *Forty One News, Inc.*, 491 F.3d at 665-66 (quoting *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998)). Plaintiffs offer little if anything to genuinely dispute that the pending state court proceeding satisfies these requirements.

As to the first, a proceeding is judicial in nature if it "investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908). The State's pending enforcement action clearly fits the bill. *See Engelbrecht*, 149 F.3d at 712. In *Engelbrecht*, the Seventh Circuit held

that even administrative proceedings are judicial in nature "when they are coercive—i.e., state enforcement proceedings." *Id.* Here, where the State seeks a judicial determination of fault, there is no doubt that the first *Middlesex* factor is met.

The Milwaukee County proceeding also implicates important state interests, namely tenant and, more broadly, consumer protection. The Supreme Court has repeatedly held that a State has a legitimate interest in protecting its tenants. *Pennell v. City of San Jose*, 485 U.S. 1, 14 (1988); *see also Bowles v. Willingham*, 321 U.S. 503, 513 n.9 (1944). The Court has likewise recognized the important interest in protecting consumers from fraud. *Edenfield v. Fane*, 507 U.S. 761, 768 (1993); *see In re Permian Basin Area Rate Cases*, 390 U.S. 747, 770 (1968). Plaintiffs, of course, deny that they have perpetrated a fraud, but for purposes of *Middlesex*, all that matters is that the state court proceeding implicates that concern. Plaintiffs may very well be the subjects of unfair and unjustified scrutiny, but resolution of those allegations is for another day.

And although Plaintiffs have not yet raised their constitutional claims in the state court, "'a federal court should assume that state procedures will afford an adequate remedy [for those claims], in the absence of unambiguous authority to the contrary.'" *SKS*, 619 F.3d at 680 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)). Plaintiffs have identified no such authority, so the Court assumes that they can adequately challenge introduction of information obtained via CID on constitutional grounds in Milwaukee County. They will, therefore, suffer no prejudice, nor will they forfeit any inalienable rights, if forced to assert their Fourth and Fourteenth Amendment claims in state court.

### C. The Bad Faith Exception Does Not Apply.

Notwithstanding the foregoing analysis, a federal court should refuse to abstain, even where *Younger* might apply, if the plaintiff can show that the parallel state proceeding was brought in bad faith. *See Grandco Corp.*, 536 F.2d at 203. Plaintiffs allege as much here, casting the underlying state case as "unwarrantedly aggressive" and "retaliatory," especially given the "staggering" length (14 claims and over 200 paragraphs) of the complaint. (ECF No. 20 at 2-3.) But to trigger the bad faith exception, a plaintiff must proffer "specific evidence from which it can be inferred that state officials have been enforcing [a] statute against [him] in bad faith and for purposes of harassment." *Grandco Corp.*, 536 F.2d at 203. In this case, Plaintiffs' evidence is primarily adverbial and adjectival, which is to say conclusory and grounded in a subjective sense of aggrievement. This will not suffice.

Plaintiffs ask the Court to throw good faith after (allegedly) bad and take them at their unsupported word. Indeed, the only objective evidence of harassment they can muster is the scope of the complaint and the fact that the state court dismissed one of the original 14 claims. (ECF No. 20 at 2-3.) If batting .930 at the pleading stage is indicative of bad faith, plaintiffs' lawyers across the country have a lot of explaining to do. The reality, of course, is that not even "evidence of multiple prosecutions is sufficient by itself to support" a claim of bad faith. *Grandco Corp.*, 536 F.2d at 203. Prosecutorial persistence in the face of repeated losses against the same defendant would raise suspicions. *Id.* BPM and Berrada, though, have not endured successive prosecutions and have managed only to oust a single claim from what they characterize as a staggeringly overbroad complaint. And they allege no other objective indication of harassment. This makes their case even weaker than the one rejected by the Seventh Circuit in *Collins v. Kendall Cnty., Ill.*, 807 F.2d 95, 99-101 (7th Cir. 1986), where the Court refused to infer bad faith or harassment in the face of "approximately thirty criminal prosecutions over a two-year period," despite the fact that the initial criminal charges had been dismissed in their entirety. If even that is not enough to trigger the bad faith exception, then Plaintiffs here fall woefully short.

## II. What Is the Remedy – Dismissal or Remand?

In the prototypical *Younger* case, a state court defendant files a claim against his state court opponent directly in federal court, so remand is not an option because the federal court has nowhere to remand the matter to. *See Belair v. Lombardi*, 828 F. Supp. 50, 52 (M.D. Fla. 1993) ("abstention under the *Younger* doctrine properly results in dismissal or stay of the case, not remand") (citations omitted). But this case's strange procedural posture leaves open the possibility of remand to Ozaukee County Circuit Court, where Plaintiffs originally filed their complaint. (*See* ECF No. 1.) The question is which remedy is more appropriate: remand or dismissal?

On one hand, dismissal makes sense. The Court must assume that Plaintiffs can present their constitutional claims in the Milwaukee County enforcement action, so dismissing this action will not result in forfeiture of those claims. *See Pennzoil*, 481 U.S. at 15. And it hardly seems efficient to send this case back to Ozaukee County and create two parallel, interdependent state court proceedings. But, pursuant to 28 U.S.C. Section 1447(c), which governs federal procedure after removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Because a motion to dismiss on *Younger* abstention grounds concerns whether the Court should exercise jurisdiction over the parties'

claims, district courts in this circuit have determined that it is best construed as a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *Nadzhafaliyev v. Hardy*, 403 F. Supp. 3d 663, 667 (N.D. Ill. 2019); *see also Bolton v. Bryant*, 71 F. Supp. 3d 802, 808 n.2 (N.D. Ill. 2014); *Whole Woman's Health All. v. Hill*, 377 F. Supp. 3d 924, 930 (S.D. Ind. 2019). While the Seventh Circuit has not explicitly endorsed this determination, its decisions have implicitly accepted a district court's discretion to construe a motion to dismiss on abstention grounds under either Rule 12(b)(1) or 12(b)(6). *See Engelbrecht*, 149 F.3d at 711-12 (accepting that a district judge in a *Younger* case may convert a motion to dismiss brought under Rule 12(b)(1)). Moreover, evaluating the pending motion under 12(b)(1) is consistent with the Seventh Circuit's general preference for functional approaches, *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 727 (7th Cir. 2011), because it allows the Court to consider material relevant to the question of abstention that is not present in the original complaint (because it was not in existence at the time that complaint was filed). *See Hill*, 377 F. Supp. 3d at 930.

It follows, then, that the Court's decision to abstain in this instance is the rough equivalent of a finding of the absence of subject matter jurisdiction. Thus, under Section 1447(c), the proper course is to remand the case to state court for further proceedings. How the parties' claims and defenses are resolved, including whether the two state court cases proceed separately or are combined, is a matter of state procedure for the state courts to resolve.

## CONCLUSION

Plaintiffs seek a declaratory judgment that will prevent the State of Wisconsin from proving, in its own courts, a violation of state law through the introduction of evidence obtained via administrative subpoenas or CIDs issued by a state agency. Principles of equity, comity, and federalism foreclose access to this kind of relief. The Court must therefore abstain and dismiss the case.

Accordingly,

**IT IS HEREBY ORDERED** that, upon its own motion, the Court will abstain from hearing this case, and the case is **REMANDED** to Ozaukee County Circuit Court for further proceedings.

**IT IS FURTHER ORDERED** that Defendants motion to dismiss, ECF No. 10, is **DENIED as moot**.

Dated at Milwaukee, Wisconsin on June 22, 2022.

    s/ *Brett H. Ludwig*
    BRETT H. LUDWIG
    United States District Judge